## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 18-41858-btf7 |
| BRITTNEE CHARLANN BAILEY, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| STATE OF KANSAS, ex rel., LANA | ) | |
| GORDON, SECRETARY OF LABOR | ) | |
| | ) | Adv. No. 18-04225-btf |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| BRITTNEE CHARLANN BAILEY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING KANSAS DEPARTMENT OF
## LABOR'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Kansas Department of Labor ("KDOL") requests a determination that

its claim against Debtor/Defendant Brittnee Charlann Bailey for overpayment of

unemployment benefits is nondischargeable under 11 U.S.C. § 523(a)(2)(A) (ECF No.

1). Ms. Bailey denies that her debt should be nondischargeable (ECF No. 9). KDOL's

motion for summary judgment is now before the court.

The court has reviewed and considered the parties' filings and arguments and

is ready to rule. The court issues this ruling in accordance with Rule 56 of the Federal

Rules of Civil Procedure, which applies here pursuant to Rule 7056 of the Federal

Rules of Bankruptcy Procedure, and it constitutes the court's findings of facts and

conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, made applicable to this matter by Rule 7052.

For the following reasons, the court GRANTS KDOL's motion for summary judgment.

## Jurisdiction & Burden of Proof

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). KDOL must prove its claim under § 523(a)(2)(A) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *Lindau v. Nelson (In re Nelson)*, 357 B.R. 508, 513 (B.A.P. 8th Cir. 2006).

## Summary Judgment Standard

Rule 56(a) provides that, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of showing that there is no genuine dispute of any material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

If the movant meets its burden, the nonmovant must set forth specific facts showing a genuine dispute of material fact for trial. *Dico, Inc. v. Amoco Oil Co.*, 340 F.3d 525, 529 (8th Cir. 2003) (citation omitted). The nonmovant's burden is not high—it only needs to bring forward some evidence that might lead the trier of fact to return a judgment in its favor should the case go to trial. *Anderson*, 477 U.S at 256–57. However, the nonmovant cannot prevail by merely relying on its pleadings

2

and must present more than a scintilla of evidence to establish a genuine issue for trial. *Dico*, 340 F.3d at 529.

A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmovant and draw all reasonable inferences from the nonmovant's evidence in favor of the nonmovant. *Anderson*, 477 U.S. at 255 (citation omitted); *U.S. Commodity Futures Trading Comm'n v. Kratville*, 796 F.3d 873, 891 (8th Cir. 2015) (citation omitted). The court may not weigh evidence, make credibility determinations, or attempt to determine the truth of any factual dispute; rather, the court may only determine whether there is a genuine dispute of any material fact for trial. *Williams v. Marlar (In re Marlar)*, 252 B.R. 743, 750 (B.A.P. 8th Cir. 2000) (citations omitted).

## **Uncontroverted Facts**

Before the court summarizes the uncontroverted facts, the court will first address several of Ms. Bailey's responses to KDOL's factual allegations. In her suggestions in opposition to summary judgment, Ms. Bailey only denies paragraphs 2, 6, 12, and 32–44 of KDOL's statement of uncontroverted facts and provides no response to the other paragraphs. This court's Local Rule 9013-1.H.2 provides, "[a]ll facts set forth in the [movant's statement of uncontroverted facts] shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party." Therefore, paragraphs 1, 3–5, 7–11, and 13–31 of KDOL's statement of uncontroverted facts are deemed admitted.

Ms. Bailey argues the court should deny KDOL's motion for summary judgment because the supporting affidavit of KDOL employee Teresa Morris is inadmissible hearsay. Ms. Bailey contends that Ms. Morris lacks personal knowledge of Ms. Bailey's KDOL file and that the affidavit fails to meet the business or public records exceptions under Kansas Rules of Evidence.

The court determines Ms. Morris' affidavit is admissible under Federal Rule of Evidence 803(6). The affidavit explicitly states that the exhibits attached to the affidavit were made as part of KDOL's customary and usual business records, and it details Ms. Morris' extensive knowledge of KDOL's processes and record-keeping procedures based on her nineteen-year employment with the agency.[1] Fed. R. Evid. 803(6); *see also Kansas ex rel. Gordon v. Oliver (In re Oliver)*, 554 B.R. 493, 498–99 (Bankr. D. Kan. 2016) (determining Ms. Morris' affidavit in that case was based on her personal knowledge and met the requirements of Fed. R. Evid. 803(6)).

Therefore, the court determines the following facts are uncontroverted: KDOL is an agency of the State of Kansas authorized to administer the joint state and federal unemployment insurance (UI) benefits program.[2] Ms. Morris has gained skills, experience, knowledge, and familiarity with KDOL's processes and record-keeping practices relating to the UI benefits program, including its fraud investigation procedures, during her nineteen years as a KDOL employee.[3] Ms.

---

[1] Morris Aff. ¶¶ 1–11.
[2] Morris Aff. ¶¶ 1–2, 13.
[3] Morris Aff. ¶¶ 3, 5–8.

4

Morris examined Ms. Bailey's KDOL file, which KDOL kept in its customary and usual business records practice.[4]

Ms. Bailey's KDOL file reflects that KDOL has twice determined that Ms. Bailey fraudulently obtained UI benefits by inaccurately reporting her employment status or wages.[5] KDOL made its first fraud determination against Ms. Bailey in late 2009.[6] KDOL based that determination on its audit of her thirty-one UI benefit claims between December 2008 and September 2009, which revealed that she inaccurately reported her employment status or wages for each of the thirty-one weeks she applied for and received UI benefits.[7]

In October 2009, KDOL informed Ms. Bailey that a UI referee determined she "willfully and knowingly made false representations to receive benefits not due."[8] KDOL determined Ms. Bailey failed to report employment or correct wages, and that she owed KDOL $6,982.00 in UI benefits she wrongfully received.[9] KDOL also banned Ms. Bailey from obtaining UI benefits for a one-year period.[10]

KDOL's second fraud determination relates to the period beginning almost immediately after Ms. Bailey's one-year ban expired. Ms. Bailey applied for UI benefits on November 1, 2010, and listed 715 N. 61st Terr., Kansas City, Kansas 66102 as her mailing address.[11] Ms. Bailey applied for and received UI benefits over

---

[4] Morris Aff. ¶¶ 8–9.
[5] Morris. Aff. ¶ 41; Exh. 1; Exh. 10.
[6] Exh. 10.
[7] Exh. 10.
[8] Exh. 10.
[9] Exh. 10.
[10] Exh. 10.
[11] Morris Supp. Aff. ¶ 8; Exh. 12.

seventeen weeks between November 2010 and April 2012.[12]  Ms. Bailey applied for UI benefits by calling a designated phone number and answering weekly claims questions that KDOL used to determine the amount she was entitled to receive for the claimed week.[13]  The first weekly claims question asks claimants if they worked during the week being claimed.[14]

KDOL's records reflect Ms. Bailey answered "no" to the first claims question each time she applied for and received UI benefits.  KDOL's reports of Ms. Bailey's answers to the weekly claims questions reflect her "no" responses with a "0" in each report's response field for "hours worked."[15]

Ms. Bailey received weekly amounts ranging between $59 and $283 in UI benefits for the seventeen weeks now at issue between November 2010 and April 2012.[16]  KDOL immediately pays out most UI benefits based on claimants' representations about whether they worked or were available to work during the week being claimed.[17]

After paying UI benefits, KDOL attempts to verify the accuracy of UI benefits claims through its crossmatch system and employer-submitted new hire reports.[18]  KDOL's crossmatch system analyzes whether claimants who received UI benefits also received wages for a week in which they received benefits.[19]  Through its

---

[12] Def.'s Answer ¶¶ 7, 8; Pl.'s Exh. 2; Morris Aff. ¶¶ 16, 17.
[13] Morris Aff. ¶¶ 18, 19–27; Exh. 6; Exh. 7.
[14] Exh. 6; Exh. 7.
[15] Morris Aff. ¶ 24; Exh. 5.
[16] Exh. 2.
[17] Morris Aff. ¶¶ 10, 23, 27.
[18] Morris Aff. ¶¶ 30–32.
[19] Morris Aff. ¶ 34.

crossmatch system, KDOL discovered Ms. Bailey worked for Skilled Healthcare Group as a part-time medication aide between November 2010 and July 2011.[20]  A KDOL fraud investigator sent Skilled Healthcare Group an "Unemployment Insurance Benefit Audit" on October 14, 2011, to which Skilled Healthcare Group responded.[21]  Skilled Healthcare Group's response showed Ms. Bailey worked for and received wages from Skilled Healthcare Group for ten of the seventeen weeks for which she applied for and received UI benefits.[22]

KDOL's second claims verification resource is employer-submitted new hire reports.  Kansas employers submit new hire reports to KDOL, listing the names and hire dates of new employees.[23]  Through its new hire reports, KDOL discovered AccessMed, Inc. hired Ms. Bailey in February 2012.[24]  So, a KDOL fraud investigator sent AccessMed, Inc. an Unemployment Insurance Benefit Audit on May 14, 2012, to which AccessMed, Inc. responded as part of an audit of her UI benefit claims.[25]  AccessMed, Inc.'s response reflects that Ms. Bailey worked for and received wages from AccessMed, Inc. between February 2012 and April 2012—the other seven weeks for which Ms. Bailey applied for and received UI benefits.[26]

Consistent with its usual practice, on July 6, 2012, KDOL mailed Ms. Bailey a Fraud Letter to the address she provided KDOL (715 N. 61st Terr., Kansas City,

---

[20] Morris Aff. ¶ 35.
[21] Exh. 3.
[22] Exh. 2; Exh. 3.
[23] Morris. Aff. ¶ 32.
[24] Morris. Aff. ¶ 33.
[25] Morris Aff. ¶¶ 32, 34, 36; Exh. 4.
[26] Exh. 2; Exh. 4.

Kansas 66102).[27]   The Fraud Letter detailed the results of its fraud investigations against her; identified the amount she was overpaid; and informed her that if she disagreed with the details included in the reports made by her employers, she could request her employers send a letter of correction or she could provide a written statement explaining her employment status in the weeks she claimed UI benefits.[28] KDOL did not receive any response to the Fraud Letter from Ms. Bailey or either of her employers.[29]

Subsequently, a KDOL UI referee issued an Examiner's Determination, finding and concluding that Ms. Bailey "willfully and knowingly made false representations to receive benefits not due" in violation of applicable law, resulting in a $3,457 overpayment of UI benefits.[30]   The Examiner's Determination also required that Ms. Bailey repay the amount KDOL overpaid her in UI benefits plus interest and again barred her from receiving UI benefits, this time from May 27, 2012, to June 1, 2013.[31]   The Examiner's Determination further explained that the determination became final sixteen days after KDOL mailed it to her last known address (715 N. 61st Terr., Kansas City, Kansas 66102) unless she responded to it by sending a letter to the UI referee explaining she intended to appeal and the reasons she disagreed with the decision.[32]   KDOL mailed the Examiner's Determination to Ms. Bailey at 715 N. 61st Terr., Kansas City, Kansas 66102 on August 23, 2012.[33]

---

[27] Exh. 2; Swartz Aff. ¶¶ 12–22.
[28] Exh. 2.
[29] Swartz Aff. ¶ 23.
[30] Morris Aff. ¶ 41; Exh. 1.
[31] Exh. 1.
[32] Morris Aff. ¶ 42; Exh. 1;
[33] Morris Aff. ¶ 41; Exh. 1; Vanhoutan Aff. ¶ 22.

KDOL did not receive any response from Ms. Bailey to the Examiner's Determination.[34]  As a result, the Examiner's Determination became a final order under Kansas law on September 8, 2012.[35]  Kan. Stat. Ann. § 44-709(b)(3).

Several years after KDOL's fraud determination became final, Ms. Bailey filed her Chapter 7 bankruptcy petition on July 13, 2018 (Case No. 18-41858, ECF No. 1). Ms. Bailey owes KDOL $2,155.86 as of the petition date.[36]  Kan. Stat. Ann. § 44-719(d)(2).

## Analysis

### A.    Applicability of Collateral Estoppel to the Examiner's Determination

To establish nondischargeability under 11 U.S.C. § 523(a)(2)(A), KDOL asks the court to apply collateral estoppel to its agency determination that Ms. Bailey falsely obtained UI benefits on seventeen occasions.  Courts apply collateral estoppel to administrative decisions when an administrative agency (1) acts in a judicial capacity and resolves any disputes of fact, and (2) provides the parties an adequate opportunity to litigate.  *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015) (quoting *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 797–98 (1986) (in turn quoting *United States v. Utah Const. & Min. Co.*, 384 U.S. 394, 422 (1966))).  Courts have interpreted "adequate opportunity to litigate" to require the agency to provide the parties with sufficient due process protections.  *Kansas ex rel. Gordon v. Stock (In re Stock)*, 2018 WL 3267632, at *2 (Bankr. W.D. Mo. July 3, 2018) (citing *Kolander v.*

---

[34] Morris Aff. ¶ 45; Vanhoutan Aff. ¶ 26; Vanhoutan Supp. Aff. ¶ 3.
[35] Morris Aff. ¶ 42.
[36] Morris Aff. ¶¶ 51–52; Exh. 8; Exh. 9.

*Weeks*, 916 F. Supp. 1042, 1046 (D. Or. 1996); *Barnes v. Oody*, 514 F. Supp. 23, 25 (E.D. Tenn. 1981)); *Kansas ex rel. Gordon v. Maskrid (In re Maskrid)*, 2018 WL 2293590, at *6 (Bankr. D. Kan. May 17, 2018) (footnote omitted).

Here, the court determines KDOL acted in a judicial capacity and gave KDOL and Ms. Bailey an adequate opportunity to litigate.  First, a KDOL UI referee acted in a judicial capacity by making findings of fact, resolving any factual disputes before him or her, and determining that Ms. Bailey violated applicable law when she falsely claimed she was unemployed when she applied for UI benefits between November 2010 and April 2012.  KDOL, therefore, acted in a judicial capacity when its UI referee issued his or her Examiner's Determination.

Second, KDOL's procedures gave Ms. Bailey and KDOL an adequate opportunity to litigate because its procedures provided sufficient due process protections.  KDOL first mailed its Fraud Letter to her last known address—the address Ms. Bailey provided KDOL when she resumed applying for UI benefits in November 2010.  The Fraud Letter informed her of the results of the fraud investigation and her right to contest the findings.  KDOL then mailed the Examiner's Determination to the same address, which explained that the decision would become final within sixteen days of being mailed and identified her appeal rights and the timeframe for doing so.  KDOL did not receive any response to the Fraud Letter or Examiner's Determination.  Ms. Bailey's affidavit attesting to her lack of knowledge regarding whether KDOL sent the Fraud Letter or Examiner's Determination does not controvert KDOL's allegations that it mailed them.

10

Therefore, the court determines KDOL's procedures provided Ms. Bailey and KDOL an adequate opportunity to litigate because KDOL's procedures provided sufficient due process protections.

Having determined KDOL acted in a judicial capacity and provided Ms. Bailey an adequate opportunity to litigate, the court next considers whether collateral estoppel applies. Courts look to the substantive law of the forum state in applying collateral estoppel, giving a state court judgment preclusive effect if a court in that state would do so. *A.H. ex rel. Hubbard v. Midwest Bus Sales, Inc.*, 823 F.3d 448, 453 (8th Cir. 2016) (citation omitted). Under Kansas law, collateral estoppel applies when: (1) a tribunal entered a prior judgment on the merits that determined the rights and liabilities at issue based on ultimate facts as disclosed by the pleadings and judgment, (2) the parties are the same or are in privity with the original parties, and (3) the issue litigated was determined and necessary to support the judgment. *Huelsman v. Kansas Dept. of Revenue*, 980 P.2d 1022, 1024 (Kan. 1999) (citation omitted). The court will address each element separately.

First, the court determines that the Examiner's Determination is a prior judgment on the merits that determined Ms. Bailey and KDOL's rights and liabilities based on ultimate facts. KDOL's UI referee determined Ms. Bailey "failed to report employment and/or correct earnings while receiving [UI] benefits . . . [and] willfully and knowingly made false representations to receive benefits not due." Based on this determination, KDOL barred Ms. Bailey from receiving UI benefits from May 27, 2012, to June 1, 2013, and determined that she owed KDOL $3,457 in overpaid UI

benefits. The Examiner's Determination established Ms. Bailey's liability to KDOL for the overpaid UI benefits she received, and it established KDOL's right to repayment with interest. Therefore, the first collateral estoppel element is met.

The second collateral estoppel element is met here because no one disputes that the parties, KDOL and Ms. Bailey, are the same parties as in the Examiner's Determination.

The final collateral estoppel element is met because the UI referee's finding and determination that Ms. Bailey "failed to report employment and/or correct earnings while receiving [UI] benefits . . . [and] willfully and knowingly made false representations to receive benefits not due" was necessary to support the UI referee's ultimate fraud determination. To make his or her decision and assess penalties, the UI referee necessarily found Ms. Bailey committed fraud. *See Kansas ex rel. Gordon v. Stock (In re Stock)*, 2018 WL 3267632, at *3 (Bankr. W.D. Mo. July 3, 2018).

Here, the UI referee determined that, because Ms. Bailey fraudulently obtained UI benefits, she had to repay KDOL the amount she received with interest. Therefore, the court determines that all collateral estoppel elements are met here, and the court will give collateral estoppel effect to the Examiner's Determination.

## B.  Nondischargeability Under 11 U.S.C. § 523(a)(2)(A)

11 U.S.C. § 523(a)(2)(A) provides:

A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

12

For a debt to be nondischargeable under § 523(a)(2)(A), "[t]he creditor must show[:] (1) the debtor made a representation, (2) with knowledge of its falsity, (3) deliberately for the purpose of deceiving the creditor, (4) who justifiably relied on the representation, which (5) proximately caused the creditor damage." *In re Juve*, 761 F.3d 847, 851 (8th Cir. 2014) (citation omitted).

The Examiner's Determination establishes elements one, two, three, and five of § 523(a)(2)(A) because: (1) Ms. Bailey represented to KDOL that she did not work each week she applied for and received benefits, (2) even though she knew she had worked, and (3) she deliberately made these misrepresentations for the purpose of obtaining UI benefits, (5) which caused KDOL to give her benefits to which she was not entitled.

As the court will explain below, the remaining element, whether KDOL justifiably relied on Ms. Bailey's representations, is met because Ms. Morris' uncontested affidavit establishes that KDOL relies on claimants' answers regarding their employment and wages so that it can expeditiously provide UI benefits to families who have lost employment and income.

KDOL's reliance on a claimant's truthfulness before disbursing benefits is justifiable because a claimant "is in the best position to know when, where, and for how much s/he is working in a given week," and because there is a substantial penalty for failing to report wages honestly. *Kansas ex rel. Gordon v. Oliver (In re Oliver)*, 554 B.R. 493, 502 (Bankr. D. Kan. 2016). The court, therefore, determines that KDOL justifiably relied on Ms. Bailey's representations regarding her employment status

and wages earned each week when she applied for UI benefits.  Overall, the court finds that KDOL has established its claim against Ms. Bailey is non-dischargeable under § 523(a)(2)(A).

Alternatively, the court determines that KDOL has met its burden and has set forth uncontroverted facts establishing all elements of § 523(a)(2)(A).  Because the court has already determined that KDOL has established element four, it will now address elements one, two, three, and five.

The court determines the first element, whether the debtor made a representation, is met.  Every time Ms. Bailey applied for UI benefits between November 2010 and April 2012, she had to answer whether she had worked during the week for which she was claiming UI benefits.  Each of the seventeen times she answered this question, she represented to KDOL that she had not worked during the week for which she was claiming UI benefits.  The court determines the first element is met.

The court determines the second element, whether the debtor had knowledge of the falsity of her representation, is met.  The court can infer the debtor had knowledge of the falsity of her representations by the totality of the circumstances. *Se. Neb. Coop. Corp. v. Schnuelle (In re Schnuelle)*, 441 B.R. 616, 622 (B.A.P. 8th Cir. 2011) (citations omitted).  Here, KDOL's fraud investigation revealed that for ten of the seventeen weeks Ms. Bailey received UI benefits, she was employed and received wages from Skilled Healthcare Group.  For the other seven weeks, KDOL determined she was employed with Access Med., Inc. and received wages.  The court infers Ms.

14

Bailey's knowledge of her work history from the uncontested reports of her employers during the times at issue. The court determines that the totality of the circumstances demonstrate that Ms. Bailey knew how much she had worked during the seventeen weeks for which she applied for UI benefits. Therefore, the second element is met.

The court determines the third element, whether the debtor intentionally deceived the creditor, is met. Ms. Bailey represented to KDOL on seventeen separate occasions that she had not worked in order to obtain UI benefits to which she would not have been entitled. If she had reported her work and wages, KDOL would have paid her a reduced amount of UI benefits or paid her no benefits at all. KDOL previously determined Ms. Bailey knowingly and falsely represented to KDOL her employment status when applying for and receiving UI benefits in 2008 and 2009 and barred her from applying for benefits for a one-year period. KDOL's prior Examiner's Determination establishes she was familiar with the consequences of inaccurate reporting and is further evidence of her intent to deceive KDOL. The court determines Ms. Bailey intentionally deceived KDOL.

The court determines the final element, whether the debtor's false statements proximately caused damage to KDOL, is met. If Ms. Bailey had not misrepresented her employment status for each of the seventeen weeks for which she claimed UI benefits, KDOL would not have provided her with the amount of benefits she received or any benefits at all for the seventeen weeks in question. Thus, Ms. Bailey's misrepresentations caused KDOL monetary damage, and the court determines the

final element is met.  Overall, the court holds that KDOL has established its claim against Ms. Bailey is non-dischargeable under 11 U.S.C. § 523(a)(2)(A).

### C.    Ms. Bailey's Arguments

Finally, the court rejects Ms. Bailey's arguments in opposition to summary judgment.  In her response to KDOL's motion for summary judgment, Ms. Bailey raises four arguments the court has not yet directly addressed.

First, Ms. Bailey denies that she reported she did not work each of the seventeen times she applied for UI benefits.  In her affidavit filed in opposition to KDOL's motion for summary judgment, Ms. Bailey alleges that when she applied for UI benefits, she would honestly answer if she had worked in the previous week or not, and there were weeks when she reported that she had worked.

"[I]t is black letter summary judgment law that a conclusory, self-serving affidavit will not defeat an otherwise meritorious summary judgment motion." *Keiran v. Home Capital, Inc.*, 858 F.3d 1127, 1132 (8th Cir. 2017) (determining nonmovant's conclusory affidavits did not rebut statutory presumption nonmovant received Truth in Lending Act-mandated notices) (citing *Chavero–Linares v. Smith*, 782 F.3d 1038, 1041 (8th Cir. 2015)).  "A properly supported motion for summary judgment is not defeated by self-serving affidavits.  Rather, the [nonmovant] must substantiate allegations with sufficient probative evidence that would permit a finding in the [nonmovant]'s favor." *Chavero–Linares*, 782 F.3d 1038, 1041 (8th Cir. 2015) (quoting *Frevert v. Ford Motor Co.*, 614 F.3d 466, 471–74 (8th Cir. 2010) (citations omitted)).

Ms. Bailey does not substantiate her affidavit with any probative evidence establishing a genuine issue of material fact as to whether she reported that she had not worked every time she applied for UI benefits during the seventeen weeks at issue. Therefore, based on KDOL's seventeen reports of each of Ms. Bailey's UI benefit applications, the court determines Ms. Bailey reported that she did not work during each of the seventeen weeks at issue.

Second, Ms. Bailey denies KDOL's factual allegations regarding its mailing of the Fraud Letter and Examiner's Determination by arguing that, under Federal Rule of Civil Procedure 56(d), she "cannot present facts essential to justify her opposition to [KDOL]'s statement[s] . . . therefore summary judgment is improper . . . [because she] was unable to dispute the fraud claim because she never received the [Fraud Letter or Examiner's Determination]."[37] Rule 56(d) requires that the nonmovant show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); Fed. R. Bankr. P. 7056. If the court determines the nonmovant has shown specified reasons why it cannot present facts essential to justify its opposition, the court may defer considering the motion for summary judgment, deny the motion for summary judgment, allow time for the nonmovant to obtain affidavits or declarations or to take discovery, or issue any appropriate order. Fed. R. Civ. P. 56(d)(1)–(3).

The purpose of Rule 56(d) is to "'prevent a party from being unfairly thrown out of court by a premature motion for summary judgment.'" *Jackson v. Riebold*, 815

---

[37] Def. Sugg. in Opp. to Summ. J., ¶ 4–10.

F.3d 1114, 1121 (8th Cir. 2016) (quoting *Toben v. Bridgestone Retail Operations, LLC*,
751 F.3d 888, 894 (8th Cir. 2014) (quotations and citations omitted)).  To survive
summary judgment, "'[t]he party seeking additional discovery,' must demonstrate:
'(1) that [she] ha[s] set forth in affidavit form the specific facts that [she] hope[s] to
elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-
after facts are essential to resist the summary judgment motion.'" *Jackson*, 815 F.3d
at 1121 (quoting *Toben*, 751 F.3d at 894 (quotations and citations omitted)).
Additionally, a "no knowledge" response does not place a fact in issue to survive
summary judgment.  *Kansas ex rel. Gordon v. Maskrid (In re Maskrid)*, 2018 WL
2293590, at *2 (Bankr. D. Kan. May 17, 2018) (applying collateral estoppel to KDOL's
Examiner's Determination and granting KDOL's motion for summary judgment).

Here, Ms. Bailey has failed under Rule 56(d) to show how postponement or
denial of KDOL's motion for summary judgment will enable her, by discovery or other
means, to rebut KDOL's showing of the absence of a material fact.  Ms. Bailey's
affidavit does not set forth facts she hopes to elicit from further discovery; it merely
contains allegations that she does not recall receiving the Fraud Letter or Examiner's
Determination, that the 61st Terrace address is her mother's address, and that, she
does not always pick up the mail she receives when she visits her mother.[38]
Additionally, her attorney's statements at oral argument strongly suggest that (1)
Ms. Bailey has already had sufficient discovery, and (2) determining whether the
Fraud Letter and Examiner's Determination arrived at the 61st Terrace address may

---

[38] Bailey Aff. ¶¶ 1–3.

be impossible. Therefore, any additional facts Ms. Bailey hopes to obtain through additional discovery may not exist. Moreover, her "no knowledge" response as to whether KDOL mailed her the Fraud Letter or Examiner's Determination does not place in issue KDOL's mailing of both to the 61st Terrace address to survive summary judgment. Therefore, based on her failure to demonstrate why she is unable to present facts essential to oppose KDOL's motion, KDOL's factual allegations regarding the Fraud Letter and Examiner's Determination are uncontroverted.

Third, Ms. Bailey argues that there is a genuine issue of material fact as to her intent when she applied for UI benefits. Ms. Bailey argues that the documents upon which KDOL bases its factual allegations do not establish her intent to deceive KDOL, and therefore that issue should be litigated. The court reject's Ms. Bailey's argument because the totality of the circumstances, as the court has explained above, establish that Ms. Bailey intended to deceive KDOL when she applied for UI benefits.

Last, Ms. Bailey argues the doctrine of laches bars the court from enforcing the Examiner's Determination or from applying collateral estoppel because KDOL failed to revive its fraud determination, and the determination became dormant in July 2017.

The court rejects this argument because, under Kansas law, the Kansas Secretary of Labor, in her sole discretion, has the authority to choose when she will enforce and collect a UI benefits overpayment. *See Kansas ex rel. Gordon v. Oliver (In re Oliver)*, 547 B.R. 423, 427–30 (Bankr. D. Kan. 2016) (holding KDOL is not barred by the Kansas statute of limitations for civil actions and the Kansas Secretary

of Labor's authority to enforce and collect UI benefits overpayments is self-effectuating and without time limits).  The court, therefore, rejects all of Ms. Bailey's arguments.

## Conclusion

For the reasons above, the court determines that there is no genuine dispute of material fact and that KDOL is entitled to judgment as a matter of law.  The court, therefore, GRANTS KDOL's motion for summary judgment and determines that KDOL's claim against Ms. Bailey is nondischargeable under 11 U.S.C. § 523(a)(2)(A). The court will issue a separate judgment on the docket consistent with these findings of fact and conclusions of law.

Dated: 5/17/2019                    /s/ Brian T. Fenimore_____
                                    UNITED STATES BANKRUPTCY JUDGE